IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLEN MCCLENDON,<br>           Plaintiff,<br><br>   vs.<br><br>CHARLES J. DOUGHERTY, an individual;<br>RALPH L. PEARSON, an individual; and<br>DUQUESNE UNIVERSTIY, a Pennsylvania<br>Corporation,<br>           Defendants. | Civil Action No. 2:10-cv-1339<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I.      Introduction**

Presently before the Court is a Motion to Dismiss Certain Claims under Rule 12(b)(6) filed by Defendants Charles J. Dougherty, Ralph L. Pearson, and Duquesne University (hereinafter "Defendants"). (Docket No. [6]). Plaintiff Kellen McClendon ("Plaintiff") filed this case claiming that he has been and continues to be the subject of racial discrimination in the form of the denial of consideration for a decanal position at Duquesne as the result of racial bias, exposure to a hostile work environment, retaliation for filing a complaint with the Pennsylvania Human Relations Commission ("PHRC"), and interference with his contractual rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Reconstruction Civil Rights Act, 42 U.S.C. §1981 ("§1981").  Defendants seek dismissal of Plaintiff's claims for Defendants' failure to consider his application for the position of Duquesne University School of Law ("Law School") dean during the 2004-2005 decanal search on the basis of race, any claim based on the Law School decanal search that took place in 2009-2010, claims of hostile work environment and claims for failure to investigate. Defendants assert that Plaintiff has not pled sufficient facts to render his claims of retaliation

1

plausible as required by the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). *Id.* For the reasons discussed herein, Defendants' Motion (Docket No [19]) is GRANTED.

## II. Relevant Factual Background

Because this matter comes to this court on a Rule 12(b)(6) Motion to Dismiss, the factual allegations set forth in Plaintiff's Amended Complaint are accepted as true. *Hemi Group, LLC. v. City of N.Y.*, --- U.S. ---, 130 S. Ct. 983, 986-87 (2010)(citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). The pertinent facts are as follows.

Plaintiff is an individual of African American descent who has been employed pursuant to a written contract by Defendant Duquesne University ("Duquesne") since 1989 and is currently a tenured associate professor of law at the Law School. (Docket No. 1, ¶¶ 2, 6-7). In the fall of 2004, Duquesne impaneled a decanal search committee to fill the vacant position of dean of the Law School. (Docket No. 1, ¶ 9). On October 29, 2004, Plaintiff submitted an application to the decanal search committee, which was chaired by Defendant Ralph L. Pearson ("Pearson") so that Plaintiff could be considered for the position of Dean. (Docket No. 1, ¶ 10). Plaintiff was notified by Pearson that his application would not be given sufficient consideration to warrant an initial interview on November 11, 2004. (Docket No. 1, ¶ 11). The vote of the decanal search committee to not consider Plaintiff was four to three with Pearson voting with the majority. (Docket No. 1, ¶ 12). The next day, November 12, 2004, Pearson informed another member of the search committee that he voted against giving Plaintiff an interview because he did not want to advance a "token" to the interview stage of the search. (Docket No. 1, ¶ 13). After Plaintiff was informed about Pearson's "token" remark, Plaintiff confronted Pearson and asked if Pearson

had, in fact, made the remark. Pearson denied making it. (Docket No. 1, ¶¶ 14-15). Subsequently, Pearson admitted that he had referred to Plaintiff as a "token" during the decanal search in 2004 on March 20, 2009. Defendant Charles J. Dougherty (Dougherty), President of Duquesne, was present at the meeting and accused Plaintiff of making baseless accusations of racism stating that it is not a racist remark for a white man to refer to an African American man as a "token." (Docket No. 1, ¶ 18).

In December of 2008, the deanship of the law school became vacant again. At that time, Professor Vanessa Browne-Barbour ("Browne-Barbour")[1], a woman of African American descent, was a tenured professor of law and associate dean of the law school. (Docket No. 1, ¶¶ 20-21). Dougherty was responsible for the appointment of an interim dean. The practice and policy of Duquesne was to appoint associate deans as interim deans when a vacancy in a dean position occurred. (Docket No. 1, ¶¶ 22-23). Regardless of the policy and practice, Dougherty appointed Professor Kenneth Gormley ("Gormley"), a Caucasian male member of the law school faculty to the interim dean position, despite the fact Gormley had no previous decanal or administrative experience of any kind. (Docket No. 1, ¶¶ 24-25). Dougherty did not consider or even interview Browne-Barbour for the interim decanal position. (Docket No. 1, ¶ 26).

Dougherty appointed Pearson to chair this committee to fill the vacant Law School dean position despite knowing that Pearson had made racially charged remarks about Plaintiff during the 2004-2005 decanal search which demonstrated Pearson's racial bias. (Docket No. 1, ¶¶ 27-28). Because Dougherty had appointed Gormley as interim dean and had not even considered Browne-Barbour, and because Dougherty appointed Pearson to lead the decanal search committee, Plaintiff concluded that to apply for the permanent law school deanship would be futile. Plaintiff, therefore, did not apply for the position. (Docket No. 1, ¶¶ 29-30).

---

[1] Browne-Barbour has also filed suit against the Law School that is pending before this Court at 10-cv-00873.

During the described time period, Duquesne had created and utilized affirmative action policies and procedures to internally investigate all complaints arising from actions of university employees implicating racial bias and related racially discriminatory conduct. (Docket No. 1, ¶ 35). Dougherty and Pearson were responsible for the implementation of these policies and procedures. (Docket No. 1, ¶ 36). One of the policies obligated the Affirmative Action officer to terminate any ongoing investigations whenever the complaining employee filed any complaint with an outside agency. (Docket No. 1, ¶ 37). On July 22, 2009 Plaintiff filed a complaint regarding the matters set forth above with Duquesne's Affirmative Action officer, and an investigation into the complained of matters was undertaken. (Docket No. 1, ¶¶ 38-39). Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") regarding these same matters on September 2, 2009. As a result, Plaintiff was notified that Duquesne's internal investigation into his complaint had been terminated pursuant to the previously identified policy. (Docket No. 1, ¶¶ 40-41).

Plaintiff argues that all of these actions on the part of the Defendants constitute violations of his rights to be free from racial discrimination under Title VII, the PHRA and §1981.

## III. Relevant Procedural History

In his complaint with the Pennsylvania Human Relations Commission ("PHRC") Plaintiff complains he was subjected to unlawful race discrimination. (Docket No. 1, ¶ 40 and Docket No. 5, Ex. A). Thirteen months later, Plaintiff filed a complaint with this court alleging that he has been and continues to be the subject of racial discrimination in the form of the denial of consideration for a decanal position at Duquesne as the result of racial bias, exposure to a hostile work environment, retaliation for filing a complaint with the PHRC, and interference with his contractual rights under Title VII, the PHRA and §1981. Defendants filed an Answer raising

a number of defenses on November 9, 2010 (Docket No. 4). At or about the same time, the instant motion to dismiss was filed (Docket No. 5) along with a supporting brief. (Docket No. 6).

Defendants seek dismissal of Plaintiff's claims based on Defendant's failure to consider his application for the position of Law School dean during the 2004-2005 decanal search arguing that that the claim is time barred as having been filed more than one hundred eighty days after the alleged unlawful employment practice occurred. Defendants also seek the dismissal of any claim based on the Law School decanal search that took place in 2009-2010 because Plaintiff did not apply for that position. Defendants further seek the dismissal of claims of hostile work environment asserting that the facts as alleged do not constitute pervasive and regular harassment. Lastly, Defendants seek the dismissal of claims for failure to investigate arguing that no such duty exists under Title VII and the PHRA. To this end, Defendant asserts that Plaintiff has not pled sufficient facts to render his claims plausible as required by the Supreme Court's decisions in *Twombly* and *Iqbal*, *supra*.

Plaintiff has responded by filing a brief in opposition on November 29, 2010 (Docket No. 15). In turn, Defendant filed its reply brief on December 13, 2010. (Docket No. 16). Thereafter the parties proceeded to mediation which was not fruitful. (Docket No. 17). As briefing has concluded, the motion is ripe for disposition and the Court now addresses it.

**IV.    Legal Standard**

As correctly noted by Plaintiff, Defendants' pleading is properly addressed as a Motion for Judgment on the Pleadings as it was filed after an answer to the complaint was filed by the defendants. *See Turbe v. Government of the Virgin Isles*, 938 F.2d 427, 428 (3d. Cir. 1991); *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002); *Wright v. Evans*, 2009 WL 799946 (D.N.J. March 24, 2009). Under Third Circuit precedent, however, when deciding a motion for judgment

on the pleadings under Rule 12(c) which raises the defense that Plaintiff has failed to state a claim upon which relief can be based, the Court should "apply the same standards as under Rule 12(b)(6)." *Turbe,* at 428. Accordingly, this Court will thus address the merits of the Defendants' motions as though they had been submitted as motions under Rule 12(b)(6).

On a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must " 'accept all factual allegations as true, construe the complaint in the light most favorable to Plaintiff, and determine whether, under any reasonable reading of the complaint, Plaintiff may be entitled to relief.' " *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 544); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and FED. R. CIV. P. 8(a)(2) (providing that a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The Court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

The determination of whether a complainant has sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "plausible claim for relief."). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

**V.     Discussion**

*A.     The 2004-2005 Decanal Search*

Plaintiff alleges that his application for the law school dean position was not given appropriate consideration because he is an African American. In support of this contention Plaintiff alleges that he was referred to as a "token" by Pearson, who cast the deciding vote against further consideration of his application. Defendants assert that Plaintiff was notified that he would not be considered for the law school dean position on November 11, 2004. Plaintiff was informed of Pearson's alleged "token" remark by a search committee member who had himself heard Pearson's remark on November 12, 2004 and confronted Pearson about the remark. Because the instant complaint was filed more than 300 days after the decision of the 2004-2005 decanal search committee to deny Plaintiff's application, Defendants argue that the subject claim for discrimination is time barred citing 42 U.S.C. §2000e-5(e)(1); 42 U.S.C. §2000e-5(e); 43 Pa.Cons.Stat. §§959(a), 959(h), 962; *National Railroad Passenger Co. v. Morgan*, 536 U.S. 101, 110 (2002); and *Vincent v. Fuller Co.*, 616 A.2d 969, 974 (Pa. 1992).

7

Plaintiff concedes the applicability of the statutory limitation provisions cited by Defendants and the cases interpreting same. However, Plaintiff argues that these time limitations are subject to the doctrines of waiver, estoppel, and equitable tolling. *National R.R. Passenger Corp,* at 114.

The time for filing a charge of employment discrimination begins when the discriminatory act occurs. A discriminatory act includes "any discrete act of discrimination in termination, failure to promote, denial of transfer, and refusal to hire." *National R.R. Passenger Corp,* at 114. In determining the accrual date for statute of limitations purposes, the Supreme Court emphasized the importance of focusing on the specific employment practice or act that is at issue. *National R.R. Passenger Corp.*, at 110-111. "Because a pay setting decision is a discrete act, it follows that the period for filing … begins when the act occurs." *Ledbetter*, 127 S.Ct. 2165. The employment practice or action is "a discrete act or single 'occurrence'" that takes place at a particular point in time. *Id*. The charging period or accrual period for that discrete act or occurrence does not always begin when the act or occurrence takes place, but when the action is actually communicated to the Plaintiff. *Delaware State College v. Ricks*, 449 U.S. 249, 258-259 (1980). In this case, Plaintiff admits he was aware that his application for the law school dean position was denied on November 11, 2004. The denial of the application was a discrete employment event as that term is defined by *National R.R. Corp.* This Court must, however, consider whether the claim is saved by either the discovery rule or equitable tolling. *See Oshiver v. Levin, Fishbien, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994).

In determining whether the Plaintiff's claim is timely, this Court must consider if the Plaintiff, by reasonable diligence, could have learned of the existence of his injury. If not, the discovery rule applies to toll the running of the limitations period. *Id*. If the Plaintiff could have

8

known of his injury, equitable tolling will stop the running of the limitations period if the defendant has by deceptive conduct caused the plaintiff's untimeliness. *Id*.

There is agreement in this case that Plaintiff was aware that his application for the law school dean position had been denied on November 11, 2004. That is the date Plaintiff became aware of his injury, i.e. the denial of his application. *See Oshiver*, at 1391. The limitations period began to run on that date, unless deceptive conduct on the part of the defendants caused Plaintiff to file his claim in an untimely manner. *Oshiver*, at 1388-1391. Plaintiff alleges that Pearson's denial of having made the "token" remark until March 20, 2009 is deceptive conduct that tolls the running of the limitations period. Plaintiff argues that because he did not know the reason for the denial of his application which he maintains was racially based, and because he was deceived by Pearson's denial, the limitations period was tolled as was the case in *Oshiver*. The Court disagrees.

In *Oshiver*, the court applied equitable tolling when the reason for a woman's discharge from a law firm was misrepresented. *Id*. at 1391-1392. The woman was told that there was insufficient work for her to remain employed by the firm. *Id*. Later, she learned from a third party that she had been replaced by a male lawyer and that there had been work available at the time of her discharge. *Id*. The court held that the limitations period was tolled from the time of her discharge until she was told of the misrepresentation. *Oshiver*, at 1391-1392. As the *Oshiver* court stated:

> Our conclusion that the equitable tolling doctrine tolls the initial running of the statutory period until plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action flows directly, and naturally, from this fundamental equitable principle. … [T]he defendant's inequitable conduct [cannot serve] to shorten the limitations period, and thus benefit the defendant.

*Oshiver*, at 1392.

In contrast, Plaintiff admits that he was made aware of the "token" remark by the person to whom it was directed and that he was aware of the remark long before the expiration of the tolling periods in question. (Docket No. 15, p. 6). Pearson need not admit the remark in order for Plaintiff to act on it when there is independent evidence that the remark was made.

In this case, Plaintiff not only should have been, but was aware of the facts supporting his cause of action and had the full statutory period within which to investigate and file his claim. *Id*. He did not. Hence, this claim is barred.

  B. *The § 1981 Claim*

Plaintiff's § 1981 claim is subject to the Pennsylvania two year statute of limitations[2] as it falls under the original provisions of § 1981. *Collins v. AT&T Corp.,* 1997 WL 460167 (E.D.Pa. August 1, 1997). As stated in Part A., Plaintiff admits that he was made aware of the "token" remark long before the expiration of the applicable limitation period in question (Docket No. 15, p. 6). Plaintiff not only should have been, but was aware of the facts supporting his cause of action and had the full statutory period within which to investigate and file his claim. *Id*. For the reasons set forth in Part A. of this opinion, Plaintiff's § 1981 claim is likewise time barred.

  C. *The 2009-2010 Decanal Search*

Plaintiff claims that the law school dean position became vacant again in 2008 and a Caucasian male was appointed to the position of interim dean over the then associate dean, an African American woman. (Docket No. 1, ¶¶ 20-26). Thereafter, Dougherty again appointed Pearson to chair the decanal search committee assigned the task of recommending a candidate for the permanent law school dean. (Docket No. 1, ¶¶ 27-28). Plaintiff asserts that he had considered submitting an application for the vacant dean position, but in light of alleged racial bias against African American applicants, decided not to do so and did not. (Docket No. 1, ¶¶ 29-

---

[2] 42 Pa.C.S.A. § 5524(7)

30). Defendant challenges these claims arguing that because Plaintiff did not apply for the Law School dean position, he has not alleged the requisite elements of a failure to hire/promote claim. (Docket Nos. 6, p.6; 16, p.4).

Plaintiff, in his opposition brief, concedes that the allegations included in ¶¶ 20-30 of the amended complaint do not set forth a claim for failure to hire or promote, but asserts that these allegations support the claim of hostile work environment. (Docket No. 15, pp. 8-9). The Court accepts Plaintiff's concession that there is no cause of action given the facts alleged for failure to hire or failure to promote and therefore GRANTS Defendants' request for relief. To the extent Plaintiff's complaint raised a claim of failure to hire/promote; said claim is dismissed, with prejudice.

### D. *Failure to Investigate*

In the Complaint's Fourth and Fifth Causes of Action (Docket No. 1, ¶¶ 49-55), Plaintiff raises claims that an investigation into his complaint of racial discrimination was initiated but subsequently terminated when he filed his complaint with the PHRC. Plaintiff appears to assert that the Defendants were under an obligation to internally investigate his allegations of racial discrimination and the termination of the investigation which had already begun breached that duty, thus violating Title VII and the PHRA. Defendants seek the dismissal of the Fourth and Fifth Causes of Action on the basis that neither Title VII nor the PHRA recognize a cause of action for failure to investigate. In his response, Plaintiff concedes the Defendants' argument, but asserts that a failure to investigate can factually support liability of an employer under a theory of hostile work environment.

There is a clear distinction that must be drawn between what Plaintiff has labeled as causes of action in his complaint and factual allegations supporting the elements of a particular

cause of action. Plaintiff now concedes that the allegation that the internal investigation at Duquesne was terminated when he filed his complaint with the PHRC merely supports his hostile work environment cause of action. The Court accepts Plaintiff's concession that there is no cause of action for failure to investigate and, therefore, rules in favor of Defendants. To the extent Plaintiff's complaint raised a claim of failure to investigate; said claim is dismissed, with prejudice.

E. *Hostile Work Environment*

The Supreme Court first recognized a hostile work environment as a basis for a discrimination claim under Title VII in *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65-68 (1986), a case claiming sexual harassment. A hostile work environment is now established as a basis for harassment claims charging discrimination against a protected class. *See National R.R. Passenger Corp,* at 115; *Faragher v. Boca Raton,* 524 U.S. 775, 786-87 (1998); *Cardenas v. Massey*, 269 F. 3d 251, 260 (3d Cir. 2001); *Abramson v. William Patterson College of New Jersey*, 260 F. 3d 265, 276-277 (3d Cir. 2001); *Mufti v. Aarsand & Co, Inc.*, 667 F. Supp. 2d 535, 544-545 (W.D.Pa. 2009).

Likewise, the PHRA provides that "[i]t shall be an unlawful discriminatory practice ... [f]or any employer because of the ... sex ... of any individual ... to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual ... with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract." 43 P.S. § 955(a). "The Pennsylvania courts have held that hostile work environment claims are cognizable under the PHRA." *Hubbell v. World Kitchen, LLC*, 688 F.Supp.2d 401, 419 (W.D.Pa. 2010)(citing *Phila. Hous. Auth. v. Am. Fed'n of State, County & Mun. Employees*, 956 A.2d 477, 484 (Pa.Commw.Ct. 2008); *Raya &*

*Haig Hair Salon v. Pa. Human Relations Comm'n*, 915 A.2d 728, 732-733 (Pa.Commw.Ct. 2007); *Infinity Broad. Corp. v. Pa. Human Relations Comm'n*, 893 A.2d 151, 157-59 (Pa.Commw.Ct. 2006)). Moreover, "[t]he proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston*, 568 F.3d at 104 n. 2 (3d Cir. 2009)(quoting *Weston v. Pennsylvania*, 251 F.3d 420, 426 n. 3 (3d Cir.2001) (citations omitted)).

In order to establish a hostile work environment claim under Title VII, a plaintiff must show that (1) he suffered intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability. *See Andreoli v. Gates,* 482 F.3d 641, 643 (3d. Cir. 2007).

Defendants assert that Plaintiff cannot sustain his cause of action for hostile work environment because he has not pled facts establishing a level of actionable harassment. In order to establish a hostile work environment claim, Plaintiff must plead facts demonstrating that the workplace is permeated with discriminatory intimidation, ridicule, and insult, sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v Forklift Systems, Inc.,* 510 U.S.17, 21 (1993).

In determining whether a work environment is sufficiently hostile, the Court must consider the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris*, at 23. Conduct that is "merely offensive", or which has the effect of making the employee's life at work merely unpleasant or uncomfortable, is, without more, not actionable. *Harris,* at 21. The

"mere utterance of an ... epithet which engenders offensive feelings in an employee," is not sufficiently significant as to effect the conditions of employment and thereby violate Title VII. *Id.*

In this Court's estimation, Plaintiff has not presented sufficient factual allegations that, if proven, would permit a jury to find that the alleged harassment occurred with enough frequency to deem it severe and pervasive. Yet, Plaintiff maintains that he has been subject to a racially hostile work environment based on the following factual allegations:

1. The decision not to advance his application for the law school dean position in the 2004-2005 decanal search because he is African American as evidenced by Pearce's reference to plaintiff as a "token".

2. Dougherty's accusation in a faculty meeting that Plaintiff was making a baseless claim of racism when he complained of being referred to as a "token" during the 2004-2005 decanal search.

3. The failure on the part of Duquesne to consider and/or install an African American woman as interim dean of the law school because she was African American.

4. The appointment of Pearson to serve as chair of the 2009-2010 decanal search committee after he had previously admitted to having referred to Plaintiff as a "token" during the 2004-2005 decanal search because Plaintiff is African American.

5. The appointment of the same Caucasian male to the position of permanent dean without interviewing a single minority candidate.

6. The termination of Plaintiff's internal complaint of discrimination by the Affirmative Action officer when Plaintiff filed a complaint about the same discrimination with the PHRC.

(Docket No. 1, ¶¶ 10-13; No. 15, p. 12). Plaintiff argues that because five of the six racially hostile events occurred between March of 2009 and April 23, 2010 these allegations set forth a sufficiently pervasive hostile atmosphere to alter the conditions of his employment. The Court disagrees. The mere number of purported discriminatory events does not control. There must be a level of discriminatory intimidation, insult, and ridicule that results in the change of conditions in the workplace. *Harris*, at 21. In this case, Plaintiff alleges only three discriminatory events that are personal to him (2004-2005 decanal search; Dougherty rebuke at faculty meeting; and termination of internal investigation). Yet, one of those events occurred in 2004, six years before this suit was brought.

The remaining events asserted by Plaintiff involve purported discriminatory actions not specifically directed at him. While such actions can be relevant evidence in a hostile work environment case, this Court must be able to assess whether the discrimination claimed, in fact, detrimentally affected the plaintiff. *Cardenas,* at 260; *Velez v. QVC, Inc.*, 227 F.Supp. 2d. 384, 410 (E.D.Pa. 2002). Plaintiff sets forth no such factual basis in his complaint. In fact, Plaintiff admits that he has suffered no adverse economic impact from the events directed against others, and only offers conclusory statements, unsupported by factual averments, as to the type of impact supporting recovery. (Docket No. 1, ¶¶ 6, 7, 48). Even accepting the proposition that Plaintiff was somehow negatively affected by these actions against others, the Court is not persuaded that the allegations are sufficient to sustain a claim for a pervasive and severe discriminatory work environment. At best, Plaintiff has asserted isolated acts that are not so

severe as to demonstrate, if proved, an abusive situation constituting a hostile work environment. *See Dreshman v. Henry Clay Villa*, 733 F.Supp.2d 597 (W.D.Pa. 2010) (summary judgment granted, inpart, because many comments concerning plaintiff's prior occupation as male stripper, his physical appearance, that he needed to "get laid" and that men should not be nurses along with instances of unwanted touching of a sexual nature were insufficient to state claim for hostile work environment); *Rose v. Woolworth Corp.*, 137 F.Supp.2d 604, 608, 611 (E.D.Pa. 2001)(granting summary judgment to defendant on hostile work environment claim where plaintiff alleged that supervisor subjected plaintiff to "constant and unremitting negative comments and evaluations" based at least in part on plaintiff's race, referred to black community as a "baby factory," stated that blacks are incapable of thinking analytically, and warned the plaintiff, who was black, not to talk to white women); *Francis v. Chemical Banking Corp.,* 62 F.Supp.2d 948, 959-60 (E.D.N.Y.1999) (granting summary judgment in favor of employer on plaintiff's hostile work environment claim where plaintiff alleged that a supervisor had called a group of African-American employees "f ___ g moolies," another supervisor referred to a co-worker as "n ___," a third supervisor questioned the use of giving money to the United Negro College Fund, and plaintiff found written on his workstation, "All 'n ___ s' should go back to Africa with a Jew under each arm"); *Woodard v. PHB Die Casting*, 255 Fed.Appx. 608, 608-609 (3d Cir. 2007)(summary judgment granted because burning cross and KKK sign drawn on rest room was not removed for three months after reported by plaintiff was insufficient to state claim for hostile work environment); *Morgan v. Valenti Mid-Atlantic Management*, 2001 WL 1735260, *3 (E.D.Pa.., Dec. 14, 2001)(summary judgment granted because during one year of employment, plaintiff was referred to a n_____, and employer stated the he would not hire Jamaicans was insufficient to state claim for hostile work environment); *Jordan v. Mel Blount*

*Youth Home*, 2008 WL 2446334, *5 (W.D Pa., June 16, 2008) (summary judgment granted because statements that women were emotional/weak, that defendant should have hired all men, and questioning plaintiff's entitlement to $20 an hour was insufficient to state claim for hostile work environment).

After viewing these facts in the light most favorable to Plaintiff, and considering the totality of the circumstances, including the limited number of racially charged incidents that occurred throughout Plaintiff's years of employment at Duquesne, the Court finds that the claimed harassment was hardly sufficiently severe or pervasive so as to create a hostile working environment. Plaintiff's claim of hostile work environment is thus dismissed, with prejudice.

**VI.   Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' Motion Defendants' Motion to Dismiss Certain Claims (Docket No. [5]) and thus Plaintiff's claims for Defendant's failure to consider his application for the position of Duquesne University School of Law ("law school") dean during the 2004-2005 decanal search on the basis of race, any claim based on the Law School decanal search that took place in 2009-2010, claims of hostile work environment and claims for failure to investigate are dismissed, with prejudice. Plaintiff, if he chooses to do so, may file an amended complaint on or before March 7. 2011.

An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:   February 15, 2011
cc/ecf: All counsel of record.