IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLEN MCCLENDON, )<br>     Plaintiff, )<br>)<br> vs. )<br>)<br>CHARLES J. DOUGHERTY, an individual; )<br>RALPH L. PEARSON, an individual; and )<br>DUQUESNE UNIVERSTIY, a Pennsylvania )<br>Corporation, )<br>     Defendants. | Civil Action No. 2:10-cv-1339<br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I. Introduction**

Presently before the Court is a Motion to Dismiss Plaintiff's Amended Civil Action Complaint (Docket No. [30]) under Rule 12(b)(6) filed by Defendants Charles J. Dougherty, Ralph L. Pearson, and Duquesne University (hereinafter "Defendants"). (Docket No. [31]). Plaintiff Kellen McClendon ("Plaintiff") filed his amended complaint claiming that he has been and continues to be the subject of racial discrimination in the form of exposure to a hostile work environment and retaliation for filing a complaint with the Pennsylvania Human Relations Commission ("PHRC"), all in violation of his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Reconstruction Civil Rights Act, 42 U.S.C. §1981 ("§1981"). Defendants seek dismissal of Plaintiff's amended complaint. Defendants assert that Plaintiff has not pled sufficient facts to render his claims of discrimination plausible as required by the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). *Id*. For the reasons discussed herein, Defendants' Motion (Docket No [19]) is DENIED without prejudice.

## II. Relevant Factual Background

Because this matter comes to this court on a Rule 12(b)(6) Motion to Dismiss, the factual allegations set forth in Plaintiff's Amended Complaint are accepted as true. *Hemi Group, LLC. v. City of N.Y.*, --- U.S. ---, 130 S. Ct. 983, 986-87 (2010)(citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). The pertinent facts are as follows.

Plaintiff is an individual of African American descent who has been employed pursuant to a written contract by Defendant Duquesne University ("Duquesne") since 1989 and is currently a tenured associate professor of law at the Law School. (Docket No. 30, ¶¶ 2, 6-7). In the fall of 2004, Duquesne impaneled a decanal search committee to fill the vacant position of dean of the Law School. (Docket No. 30, ¶ 9). On October 29, 2004, Plaintiff submitted an application to the decanal search committee, which was chaired by Defendant Ralph L. Pearson ("Pearson") so that Plaintiff could be considered for the position of Dean. (Docket No. 30, ¶ 10). Plaintiff was notified by Pearson that his application would not be given sufficient consideration to warrant an initial interview on November 11, 2004. (Docket No. 1, ¶ 11). The vote of the decanal search committee to not consider Plaintiff was four to three with Pearson voting with the majority. (Docket No. 1, ¶ 12). On November 12, 2004, Pearson stated that Plaintiff's application would not be given further consideration because Pearson did not want to advance a "token" for further consideration. (Docket No. 30, ¶ 11). After Plaintiff was informed about Pearson's "token" remark, Plaintiff confronted Pearson and asked if Pearson had, in fact, made the remark. Pearson denied making it. (Docket No. 1, ¶¶ 14-15). Subsequently, at a Law School faculty meeting on March 20, 2009, Pearson admitted that he had referred to Plaintiff as a "token" during the decanal search in 2004. (Docket No. 30, ¶ 12). Defendant Charles J.

2

Dougherty (Dougherty), President of Duquesne, was present at the meeting and accused Plaintiff of making baseless accusations of racism stating that it is not a racist remark for a white man to refer to an African American man as a "token." (Docket No. 30, ¶ 13).

In December of 2008, the deanship of the law school became vacant again. (Docket No. 30, ¶ 14). At that time, Professor Vanessa Browne-Barbour ("Browne-Barbour")[1], a woman of African American descent, was a tenured professor of law and associate dean of the law school. (Docket No. 30, ¶¶ 17-18). The practice and policy of Duquesne was to appoint associate deans as interim deans when a vacancy in a dean position occurred. (Docket No. 30, ¶ 19). Regardless of the policy and practice, Dougherty appointed Professor Kenneth Gormley ("Gormley"), a Caucasian male member of the law school faculty to the interim dean position, despite the fact Gormley had no previous decanal or administrative experience of any kind. (Docket No. 30, ¶ 20). Dougherty did not consider or even interview Browne-Barbour for the interim decanal position. (Docket No. 30, ¶ 21). Dougherty appointed Pearson to chair this committee to fill the vacant Law School dean position despite knowing that Pearson had made racially charged remarks about Plaintiff during the 2004-2005 decanal search which demonstrated Pearson's racial bias. (Docket No. 30, ¶¶ 15-16).

During the described time period, Duquesne had created and utilized affirmative action policies and procedures to internally investigate all complaints arising from actions of university employees implicating racial bias and related racially discriminatory conduct. (Docket No. 30, ¶¶ 22-23). On July 22, 2009, Plaintiff filed an affirmative action complaint (grievance) regarding the matters set forth above with Duquesne's Affirmative Action Officer, Dr. Griggs (Griggs), and an investigation into the complained of matters was undertaken. (Docket No. 30, ¶ 24).

---

[1] Browne-Barbour had also filed suit against the Law School at 10-cv-00873. That matter has been resolved by way of settlement through mediation. *See* 10-cv-00873 at Docket No. 25.

Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") regarding these same matters on September 2, 2009. (Docket No. 30, ¶ 24). Griggs forwarded Plaintiff's grievance to Dougherty and Pearson on July 22, 2009 and sought to discuss the matters with them. (Docket No. 30, ¶ 25). Dougherty and Pearson did not submit to interviews with Griggs until November 9, 2009 and October 28, 2009, respectively. (Docket No. 30, ¶ 26). Griggs requested both Dougherty and Pearson to respond to the grievance in writing. (Docket No. 30, ¶ 27). Duquesne has no written policy regarding the timeliness with which persons alleged to have committed discriminatory acts must respond to an inquiry by Griggs nor any requirement that such persons respond in writing. (Docket No. 30, ¶ 32). On April 23, 2010, Plaintiff was notified that Duquesne's internal investigation into his complaint had been terminated pursuant to a Duquesne policy requiring the termination of internal proceedings when outside agencies are involved. (Docket No. 30, ¶ 29). Neither Dougherty nor Pearson ever responded to the grievance in writing. (Docket No. 30, ¶ 31).

According to Duquesne policy, no party to an affirmative action grievance is to be represented by counsel. (Docket No. 30, ¶ 34). Plaintiff sought information to support his grievance by requesting a copy of the Diversity Search and Selection Plan developed by the decanal search committee and statistics reflecting the number of women and minorities who had applied for the position of dean. (Docket No. 30, ¶ 35). In response to his request, Plaintiff received a letter dated February 17, 2010 from Linda Drago (Drago), Vice President for Legal Affairs and General Counsel for Duquesne. (Docket No. 30, ¶ 36). Drago was acting as legal counsel for Pearson and Duquesne in violation of Duquesne policy. (Docket No. 30, ¶ 37). The letter accused Plaintiff of having defamed Pearson and impugned the integrity of the entire

search committee. As such, Plaintiff contends that Drago pre-judged his grievance by stating that the claims of racial discrimination had no basis in fact. (*Id.*).

In May, 2010, Dougherty circulated an email to the entire Duquesne community, consisting of thousands of people, belittling Plaintiff's claims of racial discrimination and referring to them as groundless, false and trivial. (Docket No. 30, ¶ 39).

The grievance procedure established by Duquesne gives Pearson, as academic vice president, sole and exclusive responsibility to review findings and recommendations of Griggs, and render final disposition on any grievance. (Docket No. 30, ¶ 40). Since Pearson has been in the position of academic vice president, he has consistently overruled the recommendations and findings of Griggs when she has recommended a finding in favor of an African American who has filed a grievance based on racial discrimination. (Docket No. 30, ¶ 41).

Plaintiff argues that all of these actions on the part of the Defendants constitute violations of his rights to be free from racial discrimination under Title VII, the PHRA and §1981.

### III. Relevant Procedural History

In his complaint with the Pennsylvania Human Relations Commission ("PHRC") Plaintiff complained he was subjected to unlawful race discrimination. (Docket No. 1, ¶ 40 and Docket No. 5, Ex. A). Thirteen months later, Plaintiff filed a complaint with this court alleging that he has been and continues to be the subject of racial discrimination in the form of the denial of consideration for a decanal position at Duquesne as the result of racial bias, exposure to a hostile work environment, retaliation for filing a complaint with the PHRC, and interference with his contractual rights under Title VII, the PHRA and §1981. (Docket No. 1). Defendants filed an Answer raising a number of defenses on November 9, 2010 (Docket No. 4). At or about the same

time, the Defendants filed a motion to dismiss certain claims under Rule 12(b)(6) along with a supporting brief (Docket Nos. 5 and 6).

Defendants sought dismissal of Plaintiff's claims based on Defendant's failure to consider his application for the position of Law School dean during the 2004-2005 decanal search arguing that that the claim is time barred as having been filed more than one hundred eighty days after the alleged unlawful employment practice occurred. Defendants also sought the dismissal of any claim based on the Law School decanal search that took place in 2009-2010 because Plaintiff did not apply for that position. Defendants further sought the dismissal of claims of hostile work environment asserting that the facts as alleged do not constitute pervasive and regular harassment. Lastly, Defendants sought the dismissal of claims for failure to investigate arguing that no such duty exists under Title VII and the PHRA. To that end, Defendants asserted that Plaintiff had not pled sufficient facts to render his claims plausible as required by the Supreme Court's decisions in *Twombly* and *Iqbal*, *supra*.

Plaintiff responded by filing a brief in opposition (Docket No. 15). In turn, Defendant filed a reply brief. (Docket No. 16). On February 15, 2011, by way of Memorandum Opinion (Docket No. 26), the Court granted Defendants' motion in its entirety, though allowing Plaintiff to file an amended complaint. On March 16, the amended complaint at issue (Docket No. 30) was filed. Thereafter, Defendants filed this Motion to Dismiss (Docket No. 31) and brief in support. (Docket No. 32). Plaintiff filed a brief in opposition to the motion to dismiss (Docket No. 42) and Defendants replied (Docket No. 43.) Oral argument was heard on June 15, 2011, (Docket No. 66), and a transcript was ordered to be produced and filed (See Docket No. 68 for transcript). As briefing and argument have concluded, the motion is ripe for disposition and the Court now addresses it.

## IV.  Discussion

Throughout the pendency of the present Motion to Dismiss, the parties have pursued discovery. As a result of certain disputes in the discovery proceedings, discovery motions have been filed and argued. Moreover, numerous documents containing material outside the Amended Complaint have been reviewed by the Court in order for these discovery motions to be decided. (Docket Nos. 34, 36, 44, 45, 46, 51, 52, 53, 54, 55, 58, 60, 61, 64, 65). In particular, the Court has had access to deposition transcripts and declarations that add detail to Plaintiff's claims that are not explicitly set forth in the complaint. In light of these events and the Court's acquired knowledge of disputed facts beyond those set forth in the Amended Complaint, the Court believes the Defendants' Motion to Dismiss should be converted to a Motion for Summary Judgment under Rule 56.

While a court can consider matters extraneous to the pleadings without conversion, those matters can only be documents that are "integral or explicitly relied upon in the complaint." *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996)).  A court is permitted to consider legal briefs and memorandums of points and authorities without requiring a conversion. *Rose v. Bartle,* 871 F.2d 331, 341-42 (3d Cir. 1989).  A court is also permitted to consider matters of public record. *Pen. Benefit Guar. Corp. v. White Consol. Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). However, if matters are considered outside of the pleadings, which are not "integral or explicitly relied upon in the complaint," on a Rule 12(b)(6) motion to dismiss, the motion must be converted into a Rule 56 motion for summary judgment and all parties must receive "a reasonable opportunity to present all the material that is pertinent to the

motion." Fed. R. Civ. P. 12(d). Upon conversion from a motion to dismiss into a motion for summary judgment, "the procedures of Rule 56 govern." Rose, 871 F.2d at 340.

**V.     Conclusion**

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss (Docket No. [31]) without prejudice and converts the motion to a Motion for Summary Judgment governed by Rule 56.

An appropriate Order follows.

> *s/ Nora Barry Fischer*
> Nora Barry Fischer
> United States District Judge

Date:   July 28, 2011
cc/ecf: All counsel of record.