IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLEN MCCLENDON, ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CHARLES J. DOUGHERTY, an individual; ) <br> RALPH L. PEARSON, an individual; and ) <br> DUQUESNE UNIVERSTIY, a Pennsylvania ) <br> Corporation, ) <br> Defendants. ) | Civil Action No. 2:10-cv-1339 <br> Judge Nora Barry Fischer |

**MEMORANDUM ORDER**

And now this 28th day of July, 2011, the Court having considered the Motion to Compel Production of Documents (Docket No. [34]) and the Supplemental Motion to Compel Discovery (Docket No. [45]), both filed by Plaintiff, the Responses in Opposition (Docket Nos. [36] and [46]) filed by the Defendants, the arguments of counsel made at the motion hearing of May 11, 2011, and the Court's *in camera* review of the American Association of Law Schools Special Site Visit Report (the Report) regarding the site visit of May 25 – 27, 2010, the Court's Memorandum Order entered on May 23, 2011 (Docket No. [47]), Plaintiff's Motion for Reconsideration and/or Clarification of this Court's order of May 23, 2011 (Document [51]), Defendants' Response in Opposition (Docket No. [54]), the arguments of counsel at the hearing of June 15, 2011 (Docket No. [66]), and having re-reviewed the Report sought by Plaintiff *in camera,* the Court has reconsidered its order of May 23, 2011 (Docket No. [47]) and will permit disclosure of a portion of said Report under the conditions set forth below.

"Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure are granted *sparingly* '[b]ecause federal courts have a strong interest in finality of judgments.'" *Jacobs v. Bayha*, Civ. A. No. 07-237, 2011 WL 1044638, at *2 (W.D.Pa. Mar. 18, 2011)

1

(quoting *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F.Supp. 938, 943 (E.D.Pa. 1995)) (emphasis added). "Because of the interest in finality, at least at the district court level … the parties are not free to relitigate issues the court has already decided." *Williams v. City of Pittsburgh*, 32 F.Supp .2d 236, 238 (W.D.Pa.1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992)). The purpose of a motion for reconsideration is "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). A Court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Where the basis of a motion for reconsideration is to correct a manifest injustice, the moving party must show not only that the underlying decision was wrong but "that it was clearly wrong and that adherence to the decision would create a manifest injustice." *Payne v. DeLuca*, No. 02-1927, 2006 WL 3590014, at *2 (W.D.Pa. Dec.11, 2006); *see Donaldson v. Informatica Corp.*, 2009 WL 5184380, *1 (W.D.Pa. December 22, 2010). In the Court's opinion, manifest justice, taking into consideration that Plaintiff's counsel has never seen the Report[1], appears to favor allowing Plaintiff's counsel the opportunity to review a portion of said Report *in camera*

---

[1] Plaintiff has seen the report twice before. It should be noted that the review of the Report by Plaintiff and his execution of the confidentiality agreement took place *after* the filing of this lawsuit and so Plaintiff, a law professor, should have been aware at the time he reviewed the Report that if it contained discoverable information, he might be waiving his right to use it in this lawsuit by signing the confidentiality agreement.

thus allowing Plaintiff's counsel the opportunity to pursue specific discovery requests addressed to the AALS, if necessary.

The Court first notes that the Report relates to two (2) general areas: i.e. governance and finances. Given the nature of the present suit, the finances section of the report is clearly irrelevant and, in this Court's estimation, does not lead to potentially discoverable and admissible evidence. Taking the focus of the report into consideration, the Court also notes that Plaintiff alleges at ¶ 8 of his Amended Complaint (Docket No. [30]), disparate treatment, a racially hostile working environment, a failure to establish and maintain an effective means of resolving complaints of racial discrimination, failure to cooperate with internal Affirmative Action investigations, improperly terminating Affirmative Action investigations, a failure to affirm recommendations made by the Affirmative Action Officer, intimidation of and retaliation against those who complain of racial discrimination and the denial of his contractual rights to a grievance procedure for complaints of racial discrimination that include a completed investigation and final determination.[2] At argument, Plaintiff's counsel stressed his client's deprivation of Plaintiff's purported contractual rights to a complete grievance procedure. (Docket No. 68, p. 67). It is against these claims that relevance is determined as to each discovery request made. *Texas Capital Corp. v. Fleet Capital Corp.,* 2004 WL 1472778 (E.D.Pa.).

Plaintiff asserts that the imposition of unnecessary limitations on discovery is to be avoided in Title VII cases. *Trevino v. Celanese Corp.,* 701 F.2d 397, 405 (5th Cir.1983); *see Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 54 (D.N.J. 1985); *see also Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d. Cir. 1995). While these cases support the Plaintiff's contention, they all pre-date the amendments to Rule 26 that went into effect in 2000. Those

---

[2] His claims as to the decanal search of 2004-05 and the use of the term "token" applied to his application to that search and the failure to investigate his grievance of 2010 have been dismissed as independent causes of action, with prejudice. (Docket No. [26]).

amendments "as restyled in 2007, narrowed the scope of party-controlled discovery to matters 'relevant to any party's claim or defense'" rather than "any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending litigation.'" *Moore's Federal Practice 3d.* §26.41[2][a]. However, neither the 2000 nor 2007 amendments to Rule 26 preclude inquiry into all matters relevant to the subject matter involved in the pending litigation. The Court is permitted to expand the scope of discovery in cases requiring a broader scope of discovery, even as to a specific single request, and a demonstration of good cause. *Id*. at §26.41[6][b]. It is for the Court to determine if the discovery is relevant to support a claim or defense. *Id*. at §26.41[6][c]. Ultimately, it is the Court's responsibility to use its administrative authority to control discovery eliminating instances in which parties stray well off the target of what is relevant to the matters at issue in the case. *Id*. One consideration would be information not specific to the particular claim, but similar enough to render the matter relevant. *Id*. at §26.41[7][a]. In this case, information that demonstrates similar treatment as that alleged could be relevant.

Having reviewed the Report *in camera*, the Court finds that the information contained in it is entirely a summary of information supplied to the site visitors by others. Accordingly, nothing in the report is admissible at trial as all the information is hearsay and does not fit within any hearsay exception. Fed. R. E. 803, 804, 807; *Ebenhoech v. Koppers Industries, Inc.*, 239 F.Supp 2d. 455, 462 (D.N.J. 2002) *citing United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989), *cert. denied*, 493 U.S. 1062 (1990). However, it is not an objection to the discoverability of information that it will not be admissible at trial. *Id*. at §26.43. This is particularly so when the item sought to be produced could suggest the existence of documents that are related to the allegations set forth in the complaint. *Id*. at §26.44. Finally, in Title VII cases, a plaintiff will still

be permitted a broader than normal scope of discovery because of the very nature of the claims, the information necessary to prove the claims, and the diasporatic nature of the information itself. *Id*. at §26.46[7][a].

In its previous order (Docket No. [47]), the Court noted that the site visit was preceded by communications from AALS to members of the law school faculty asking for faculty members to meet with the site visitors. (Docket No. [54-1]). Plaintiff received such a letter as well as a list of faculty members who had also received the letter. (*Id*.). Moreover, Plaintiff was asked to recommend other faculty members to receive the letter. (*Id*.). It is clear that Plaintiff knew who was asked to be interviewed by AALS as well as whom, if anyone, he recommended for an interview. There is nothing to prevent Plaintiff from approaching anyone on the list to ask if he/she were aware of alleged racial discrimination in the governance of the law school. Moreover, as Plaintiff apparently met with the site visitors and read the Report on two (2) occasions, he can surely identify the site visitors[3]. At the commencement of this case, Plaintiff could have noticed such depositions and included a Rule 30(b)(6) notice for the deposition of an AALS representative with a notice to produce any documents provided during the site visit. He did not.[4]

With regard to the report in question, there is reference to Plaintiff and the fact he was not recommended for the decanal position in 2005 and that his elimination from consideration occurred at an early stage. The report then makes note of the filing of this lawsuit. In a footnote,

---

[3] The Court rejects Plaintiff's claim that he cannot communicate his knowledge of the contents of the report on the grounds that he signed a confidentiality agreement. Such an argument suggests that no party can communicate with his or her attorney any information acquired from a confidential source, even when that information could lead to discoverable information. Such an argument is akin to asserting that communications between a physician and patient cannot be disclosed to the patient's attorney in a medical malpractice action. It is clear that Plaintiff can communicate freely with his counsel the contents of the report in an effort to identify relevant information for additional investigation, permitted discovery, the identification of witnesses and use at trial.

[4] On January 10, 2011, this Court, after a Case Management Conference where discovery needs and timing were discussed, entered an Order giving the parties until June 6, 2011 to complete fact discovery. (Docket Nos. 21 and 24).

the report references voiced complaints about the 2004-2005 decanal search process, the absence of minority candidates, and the receipt by the site visitors of a large number of documents about the Guter search furnished by a faculty member who had access to information about that particular decanal search.[5] There are also references to comments by Dougherty in the press denying claims of discrimination and the site visitors' acknowledgement that there are concerns voiced by most of the minority faculty about the school's governance.

In its initial decision regarding the discoverability of the Report, the Court focused on factual statements in the report that were specific to the claims raised in Plaintiff's Amended Complaint. As can be understood from the Report references above, there are indirect implications of possible discrimination voiced by faculty members that might lead to relevant evidence pertinent to Plaintiff's claims to render limited disclosure of the Report, when considering the arguments of counsel. Specifically, Plaintiff has narrowed his request to review the Report in order to determine what information was gathered by the site visitors that referenced possible discrimination. (Docket No. 68. p. 44). Such documents, as stated above are mentioned in the Report. Plaintiff should be permitted to identify, obtain and review these documents. Accordingly, the Court will permit the Plaintiff to review the Report *in camera* in order to be exact in his attempt to obtain the noted documents and inquire as to the circumstances in which they were obtained.

The Court has been informed that AALS considers the Report confidential. AALS transmitted the Report to Dougherty and Dean Gormley with a cover page stating:

> IMPORTANT: The report was prepared for the use of the President and Executive Director of the Association of American Law Schools and is not for public release. Any copying or redistribution of part or all of this report is subject to this restriction.

---

[5] Plaintiff's claims arising out of the 2004-2005 decanal search have been previously dismissed, with prejudice. (Docket No. 27)

The Executive Director of the AALS, Susan Westerberg Prager, also directed a memorandum to the Members of the Duquesne Law School Faculty , including Plaintiff, stating as follows:

> At that outset I want to emphasize that all AALS site visit reports are formally categorized by the AALS as confidential documents. AALS's written policies make explicit that no person other than the Dean and the President has the right to see the Report of an AALS site team. However, the Dean is permitted to share the report with members of the full-time faculty, with professional staff of the law school, and with officials of the university who have official reason for access.
> * * *
> I cannot emphasize strongly enough that, if a Dean decides to share the report with any individual(s) who fall within the limited circle of those to whom he may provide access, AALS requires that the confidentiality of the report be preserved. It has come to my attention that a member of the faculty has expressed resistance to the idea that the AALS can constrain access to communications in the AALS membership process. This fact causes me to take the unusual step of asking your dean to consider not providing access to the Report of the Special Team to members of the faculty who will not honor the confidentiality of the Report or to take additional steps to assure confidentiality.

Plaintiff agreed that the Report would be kept confidential. Plaintiff signed the Confidentiality Agreement and was given the opportunity to review the Report. Plaintiff was subsequently given the opportunity to review the AALS Site Visit Report a second time. Because there is a general agreement that the Report, itself, should be kept confidential, it is appropriate for the Court to limit the use of the Report.

However, Rule 26 allows generally only two approaches for seeking the protection of sensitive-but discoverable-information, like that at issue here. A party seeking to protect the confidentiality of such information may argue that the information is protected by an evidentiary privilege. Any material covered by a properly asserted privilege would necessarily be protected from discovery, pursuant to Rule 26(b)(1). Where, as here, such a privilege is not available, a protective order that limits discovery in accordance with Rule 26(c) may be applied. The court, in its discretion, is authorized to fashion a set of limitations that allows as much relevant material to be discovered as possible, while preventing unnecessary intrusions into the legitimate

interests-including privacy and other confidentiality interests-that might be harmed by the release of the material sought. *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

Plaintiff's counsel, and Plaintiff, will therefore be permitted to review the Report *in camera*, with the section pertinent to finances redacted. Counsel for Defendants shall produce the Report to Plaintiff and his counsel in redacted form on or before August 11, 2011. Plaintiff and his counsel are prohibited from disclosing the contents of the Report beyond the confines of this case, without prior notice to AALS and Duquesne. Such notice will be sufficient to allow AALS and/or Duquesne the opportunity to seek a protective order from this Court if either chooses to do so.

Plaintiff's Motion for Reconsideration is hereby GRANTED consistent with the terms of this Memorandum Order.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record.