# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLEN MCCLENDON,<br>                Plaintiff,<br><br>   vs.<br><br>CHARLES J. DOUGHERTY, an individual;<br>RALPH L. PEARSON, an individual; and<br>DUQUESNE UNIVERSTIY, a Pennsylvania<br>Corporation,<br>                Defendants. | Civil Action No. 2:10-cv-1339<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff's "Motion to Compel AALS to Produce Documents Pursuant to Subpoena Duces Tecum and to Compel Defendants to Produce Documents Pursuant to Request for Production." (Docket No. 84). The Court has considered all filings of record pertinent thereto, as well as the parties' arguments. (Docket No. 94). The matter is ripe for disposition. For the following reasons, Plaintiff's motion [84] is DENIED.

### I.    Jurisdiction Over Third Party

Plaintiff submitted a subpoena to Susan Westerberg Prager (not AALS) in the United States District Court for the District of Columbia. (Docket No. 84-2). Accordingly, this motion, as directed to AALS, should have been brought in that district.[1] AALS has, however, waived this argument, (*see* Docket No. 86), such that the Court will exercise jurisdiction over the matter.

---

[1] "[A]ny motion for an order compelling compliance with the subpoena 'must be made in the court where the discovery is or will be taken.'" *Curry v. Delta Intern. Machinery Corp.*, Civ. No. 07-0828, 2008 WL 2620103, *1 (W.D. Pa. 2008) (Lancaster, J.) (quoting Fed.R.Civ.P. 37(a)(2)). Therefore, the power to compel compliance with a subpoena lies with the court that issued the subpoena. *Id.* (citing Fed.R.Civ.P. 45(c)(2)(B)(i), 45(c)(3)(A), and 45(e)).

## II. Motion to Compel Defendants

The Court now turns to the pending motion to compel the Defendants to produce documents. (Docket No. 84). The underlying document requests were made after the close of discovery, which was initially set to close on June 6, 2011. (*See* Docket No. 21 at ¶ 2). Plaintiff moved to extend discovery in order to "depose the authors of the AALS report *for the purpose, inter alia, of inquiring as to whether those authors received any information ... touching on racial discrimination in the course of their field work at the [Duquesne] law school.*" (*Id.* at ¶ 7) (emphasis added). Moreover, Plaintiff admitted that he "is not seeking any information contained in the report…" (*Id.* at ¶ 8). Plaintiff then filed a supplemental motion to extend discovery for the purposes of compelling Defendant Pearson to produce certain documents. (Docket No. 52 at 6). Plaintiff also moved the Court to reconsider its earlier discovery order. (Docket No. 51).

In response to these motions, the Court extended discovery *only* "as to the discovery directed to AALS." (Docket No. 72 at 1). Thus, discovery was extended to September 12, 2011 *as to AALS only*. (Docket No. 72 at 1-2). As discovery was closed as to the Defendants, Plaintiff's motion is denied.[2]

## III. Motion to Compel Third Parties

The Court also denies Plaintiff's motion as to the AALS for several reasons. The Court will first review Plaintiff's requests, then provide its rationale for denying the motion.

---

[2] The Court notes that, during the pendency of the instant motion, the parties entered, and the Court signed, a stipulation addressing a portion of the discovery which Plaintiff seeks to compel in the instant motion, (*see* Docket Nos. 96-97), such that the request as to that production is moot. The Court strongly approves of such extra-judicial solutions to discovery disputes.

Plaintiff has made seven document requests in the subpoena directed to Susan Westerberg Prager (hereinafter, Dean Prager[3]). Plaintiff seeks production of:

- Appendix A of the Report.
- Appendix B of the Report.
- "The ABA/AALS Report of the Joint Site Visit."
- "Copies of all documents and any other material provided by Dean Gormley or any other representative of the law school" provided to the AALS site team.
- A copy of Duquesne's response to the AALS report.
- The memorandum submitted by certain faculty members detailing intimidation by other faculty members.
- Certain letters addressing intimidation.

(*See* Docket No. 84-2 at 2 for all requests).

With regard to Appendix B (Request 2), Plaintiff admits that he already has a copy of the document, and, therefore, no longer seeks production of the document through discovery. (Docket No. 84 at ¶ 11). In light of AALS's assertions, Plaintiff has also withdrawn Requests 6 and 7. (*Id.* at ¶¶ 15-16). Finally, the parties entered into a stipulation in which Defendants agreed to provide Plaintiff portions of Duquesne's response to the Report, such that Request 5 is moot. (*See* Docket Nos. 96-97). Thus, the only Requests which survive are Requests 1, 3 and 4.

---

[3] Susan Westerberg Prager is former Dean at UCLA Law School. She was named Executive Director and CEO of the AALS, and received her appointment in 2008. *See* http://www.aals.org/about_prager.php (last visited Oct. 17, 2011). She was not part of the relevant site visit. (*See* Docket No. 92-1 at ¶ 3) (listing members of site visit team). Dean Prager did communicate with Duquesne regarding the site visit, as she drafted Appendix A to the Report.

### a. Incorrect Service

The first reason the Court sees to deny Plaintiff's motion as to the AALS relates to service, because the subpoena was incorrectly served. A subpoena must be "deliver[ed]" to the named person. Fed.R.Civ.P. 45(b)(1).

AALS points to a nearly identical situation in Delaware, and this Court finds that example persuasive. In *Application of Johnson and Johnson*, 59 F.R.D. 174 (D.Del. 1973) ("*Johnson & Johnson*"), the Court addressed several subpoenas served on Per Lindbo, Leif Sandvik, and Kjell Holtermann, each of whom were identified in the subpoenas as officers of Jordan-Delaware, a party to the underlying litigation. *Id.* at 176. There, the Court found that the merely "parenthetically" identifying individuals as officers of a corporation did not fulfill the requirement for personal service on the individuals identified in the subpoenas. *Id.* at 177. The Court observed that "service was made on the registered agent for Jordan-Delaware in Wilmington. This does not fulfill the requirement for personal service on the individuals who also happen to be officers of Jordan-Delaware." *Id.*

Here, the subpoena was directed to "Susan Westerberg Prager." (*See* Docket No. 84-2). The subpoena did not identify her, anywhere, as "Dean." (*Id.*). Nor does the subpoena make reference to Dean Prager's role at AALS. (*Id.*). While the requests in the subpoena clearly pertain to AALS, it is Dean Prager, in her personal capacity, to whom the subpoena is addressed. Plaintiff's bald assertion that "simple logic" leads to the conclusion that AALS was the intended party is insufficient in light of *Johnson & Johnson*. (*See* Docket No. 84 at ¶ 5). In that case, too, it appears that "simple logic" would have dictated that Jordan-Delaware was the party from which discovery was sought. Yet, as there, the fact remains here that Plaintiff addressed the subpoena to an individual, and not the entity from which he seeks production. *Johnson &*

*Johnson*, 59 F.R.D. at 177 ("The notices of depositions are clearly directed to the individuals… This does not fulfill the requirement of personal service on the individuals who also happen to be officers of [the corporation].").

Moreover, the attempts at service were sloppy, at best. To this point, the AALS has filed the declaration of its employee, Chaim Shmulewitz, which clearly demonstrates the inadequacy of process. Mr. Shmulewitz claims that a gentleman approached him while he was at a receptionist's desk in AALS's Washington, D.C. office. (Docket No. 92-2 at ¶ 4-5). This gentleman stated that he had a subpoena for Dean Prager, (*Id.* at ¶5), which was correct, given that the subpoena was addressed to Dean Prager personally. (Docket No. 84-2). Mr. Shmulewitz informed the gentleman that nobody was available to accept service for Dean Prager. (Docket No. 92-2 at ¶¶ 5). After the gentleman left, and then returned, Mr. Shmulewitz again informed the gentleman that nobody could accept service on behalf of Dean Prager. (*Id.* at ¶6). The gentleman then proceeded to "dump[] the subpoena on the desk" and leave the office. (*Id.* at ¶ 7).

Because the subpoena was addressed to Dean Prager personally, and not in her professional capacity related to the AALS, personal service was required. *FTC v. Compagnie De Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312-1313 (D.C.Cir. 1980); *Johnson & Johnson*, 59 F.R.D. at 177; *Duffy v. Kent County Levy Court*, --- F.Supp.2d ----, 2011 WL 2148672, *4 (D.Del. 2011); *Whitmer v. Lavida Charter, Inc.*, 1991 WL 256885, *2 (E.D. Pa. 1991). In addition to the Delaware District Court in *Johnson*, *supra*, other courts have found that personal service was not effected in situations similar to the one at bar. *See, e.g., United States v. Philip Morris, Inc.*, 312 F.Supp.2d 27 (D.D.C. 2004) (service was insufficient where subpoenas were left at mail room of Department of Justice or with support staff when intended attorneys worked at DOJ); *Burns v. Lavender Hill Herb Farm, Inc.*, 2005 WL 256459 (E.D. Pa. 2005) (finding

5

service improper where the subpoena was left in a judge's waiting room). Thus, in light of this authority interpreting Rule 45, personal service was not properly achieved by simply "dump[ing]" the subpoena on a receptionist's desk, as was done here.

Plaintiff's Counsel attempts to avoid the conclusion that his service was performed incorrectly by citing to Commentary C45-9 of the Rule. Counsel argues that this Commentary tells us that Rule 45 "relates back to Rule 4." (Docket No. 98 at 6). The Commentary actually distinguishes, in several instances, between a Rule 4 summons and a Rule 45 subpoena. *See*, *e.g.*, Commentary C45-9 to Fed.R.Civ.P. 45 (noting that "[p]ersonal delivery is the only method specified[ by Rule 45], and this differs substantially from service of the summons under Rule 4, for which a variety of methods are made available."); *id.* (noting as to summons or subpoena of an individual that "[o]ne immediate alternative for summons service under Rule 4(d)(1) is the delivery of the summons to a person of suitable age and discretion at the defendant's resident, but that alternative, too, *is unavailable for subpoena service*, either directly or at the Court's order.") (citing *Federal Trade Commission v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300 (D.C. Cir. 1980)) (emphasis added).

The most plausible argument which Plaintiff might advance under C45-9 is contained in the following paragraph:

> If a particular person in the employ of a corporation or other entity is the person sought as a witness, the subpoena should of course be delivered to that person, but if the corporation itself is the subpoenaed person, as on a subpoena duces tecum that seeks only materials and it doesn't matter who actually produces the materials, the subpoena can be directed to the corporation and served on any appropriate corporate agent. It is a good idea in that case to have the subpoena delivered to a person who could be served with a summons in the corporate (or other entity's) behalf, such as an officer or managing agent (see Rule 4[d][3] ), which will clarify that the subpoena has reached someone of responsibility. Serving a person in some menial position in the corporate employ, while it may work, reduces the prospect of a contempt punishment for disobedience if the corporation should claim that it never got notice. The cited rule, Rule 4(d)(3),

6

allows summons service on corporate agents designated by law, like certain state officials under state statutes, and some case law has also sustained subpoena service through such officials, but recourse to that should always be a last resort only.

However, Plaintiff's reliance on this paragraph is misplaced as, in the Court's view, it quite clearly distinguishes between service of a subpoena *on a particular person*, in which case the subpoena needs to be delivered to that person, and a subpoena directed to a corporation, which may be served on "any appropriate corporate agent." *Id.* In the instant case, Plaintiff addressed the subpoena to an individual and, for the sake of argument, served it upon a corporate agent.[4] This is not proper service, as made clear by the very Commentary that Plaintiff cites.[5]

### b. Overbreadth of Requests

---

[4] The Court makes no decision as to whether service would have been correctly made upon a corporate agent, because that is not the situation presented to the Court. Despite Counsel's repeated claims that the subpoena was addressed to the AALS as a corporation, (*see* Docket No. 98 at 6-7), the fact remains that the subpoena, on its face, was addressed to "Susan Westerberg Prager," and made no reference to her previous deanship or current position at AALS. (*See* Docket No. 84-2).

[5] Plaintiff's Counsel also attempts to distinguish several cases cited by the AALS. This effort is intriguing. Counsel states that "[t]he three cases that [AALS] cite[s] have to do with instances in which a subpoena was served… by *handing it to someone in the mail room of a corporate headquarters*. [This is] not the kind of situation we have here." (Docket No. 98 at 6). He goes on to say that "[w]e did have personal service here. We had a process server actually hand the subpoena to a live human being at the offices of the AALS." (*Id.* at 7). Without addressing the inherent contradiction in that statement – it seems to this Court that a "someone in the mailroom of a corporate headquarters" *is* "a live human being at the offices" of a corporation – the Court notes that AALS has submitted the declaration of the person allegedly "handed" the subpoena, and that declaration makes clear that Mr. Schmulewitz refused to accept service for the subpoena directed to Dean Prager in her personal capacity. (*See* Docket No. 92-2 at ¶¶ 5-6). This account is corroborated by the email Mr. Shmulewitz sent immediately after the "service" was completed. (*Id.* at Exhibit A). Thus, Counsel's argument that the subpoena was "handed" to someone at AALS' office is not persuasive, as the true situation is more akin to another case from which he attempts to distinguish this one: according to Counsel, a subpoena "served by sliding it under the door of a residence, not giving it to a person" is "[c]learly, not service of process." (Docket No. 98 at 6). Thus, any way the issue is viewed, Plaintiff's Counsel's own arguments refute the very points he is apparently trying to make.

7

The Court also finds that the remaining Requests are overbroad, and the Court sees no reason to compel production in light of its earlier Memorandum and Order. (Docket Nos. 71-72). The Court is cognizant that the Court of Appeals "frown[s] upon unnecessary discovery limitations in Title VII… cases." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d. Cir. 1995). Still, *Sempier* only speaks to *unnecessary* limitations. That does not mean the scope of discovery in Title VII cases is limitless. *See Kresefky v. Panasonic Communications & Systems Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996) ("[T]he scope of Title VII discovery is 'not without limits…. Discovery should be tailored to the issues involved in the particular case.'") (citing *Robbins v. Camden City Board of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985)). The Court already addressed Plaintiff's concerns as to the scope of discovery when it granted his motion to extend discovery, (*see* Docket No. 71 at 3-5), and the Court sees no reason to fully reproduce its previous discussion at this point.

Here, the Court extended discovery to allow Plaintiff to determine what information in the Report "referenced possible discrimination." (Docket No. 71 at 6). The Court permitted Plaintiff's counsel to review the Report *in camera* "in order to *be exact* in his attempt to obtain the noted documents."[6] (*Id.*) (emphasis added). The Court then made clear at oral argument on August 29, *before this motion was filed*, that it "was most concerned with Footnote 4." (Docket No. 89 at 66). Plaintiff was told that the Court's intent was not "to reopen broad discovery as to AALS and/or Duquesne." (*Id.*).

In light of the Court's clear statement of its intent, Plaintiff's counsel's *in camera* review, and his "reputation for intellect," (Docket No. 84 at ¶ 7), Plaintiff should have been able to "be

---

[6] The Court notes that Plaintiff has had access to the Report in his role as faculty member of the Law School. (*See* Docket No. 84 at ¶ 7) (acknowledging that Plaintiff had opportunity to review the Report).

exact" in the requests he directed towards AALS. Instead, he has broadly requested Appendix A, the 2007 Reports of the ABA and AALS, and copies of *all* documents submitted to the AALS site team. (Docket No. 84-2 at 2). As to the first, AALS argues that Plaintiff was provided same. (Docket No. 98 at 34). Plaintiff denies this. (*Id.* at 35). The Court, however, has reviewed Appendix A *in camera*, as part of its earlier *in camera* review of the entire Report. (*See* Docket No. 41). Appendix A merely states that the AALS was concerned that the Law School may have violated certain AALS bylaws pertaining to governance and finance. There is nothing of relevance to Plaintiff's claims of discrimination.

As to the 2007 Reports, Plaintiff argues that "since the 2007 report(s) was mentioned in the AALS 2009 report, it is relevant for discovery purposes in this litigation, at least insofar as governance issues are concerned." (Docket No. 84 at 8). This, as the Court made clear at the August 29 hearing, *is not* what was directed in its July 28 opinion and order. (*See* Docket No. 89 at 66). Plaintiff has seemingly latched onto the Court's distinction between the governance and finances sections of the report, where the Court stated that "the finances section of the report is clearly irrelevant." (Docket No. 71 at 3). Read in a vacuum, this *might* support Plaintiff's efforts to discover *any* documents referenced in the governance section of the Report. However, as the Court emphasized to Plaintiff and his counsel, both lawyers, at the August 29 hearing, the Court extended discovery *only* so that Plaintiff could "be exact" is his efforts to "identify, obtain and review" the AALS documents relating to "possible discrimination," (Docket No. 71 at 6), *not* any and all documents in possession of AALS or Duquesne. (Docket No. 89 at 66). As the Court's Order, (Docket No. 71), and August 29 discussion, (Docket No. 89), made clear, this discovery request should have been directed to the documents referenced at Footnote 4 of the Report.

The same reasoning applies to Request 4 as to the 2007 Reports. The Court has permitted an extension of discovery in order for Plaintiff to make specific discovery requests for documents. The Court, in its August 29 discussion, explained to Plaintiff's counsel that the extension of discovery applied only to documents potentially discussing racial discrimination, as referenced in Footnote 4. (Docket No. 89 at 66). After Plaintiff's *in camera* review and the Court's explicit reference to Footnote 4, (Docket No. 89 at 66), Plaintiff should have been able to "be exact" in his request for these documents, or, at the very least, made an effort to limit his request to those documents that "referenced possible discrimination." (*See* Docket No. 71 at 6). Instead, Plaintiff ignored this Court's order and clear explanation of that order and requested "all documents" submitted before, during or after the site visit. (*See* Docket No. 84-2 at 2). The scope of this request clearly exceeds the scope of discovery allowed by the Court's order, which the Court tailored to ensure that Plaintiff could acquire the *relevant* documents he sought and at the same time, limit the cost and burden to the third-party AALS. For this reason, the Court finds Request 4 to be overbroad.

Thus, the Court finds, after *in camera* review, that one of the documents that Plaintiff seeks is wholly irrelevant as it makes no reference to anything remotely resembling discrimination or race. As to the other two requests, Plaintiff clearly exceeded the scope of discovery allowed by the Court's Order extending discovery. Moreover, there is no prejudice to Plaintiff in denying his motion to compel because Plaintiff, had he been diligent, could have secured these documents during the several months this Court allowed for discovery at the beginning of this litigation.[7]

---

[7] This Court's standard practice is to allow four to six months for discovery in employment cases. There were no objections to this practice at the time of the case management conference. Given that this case had been through the beginnings of Duquesne's administrative process, as well as Pennsylvania Human Relations Commission proceedings, (*see* Docket No. 30 at ¶ 55),

### c. Plaintiff's Abuse of the Discovery Process

As the Court has repeatedly admonished Plaintiff and his counsel, Federal Rule of Civil Procedure 1 expressly states that the Rules are to be "administered to secure the just, speedy, and inexpensive determination of every action and proceeding." (*See* Docket Nos. 78 at 1; 90 at 2). At this point, the Court would add two further points to its previous statements to Plaintiff, both of which should be evident to Plaintiff, as a law professor, and his attorney. First, Rule 16(b)(3)(A) specifically requires the Court to issue, at an early date in the litigation, an Order that limits the time parties have to complete discovery. Under Rule 26, a court may, on its own, limit discovery where the discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, [or where] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed.R.Civ.P. 26(b)(2)(C)(i)-(ii). Considered in light of Rule 1, it is clear that the purpose of these rules is to expeditiously deal with discovery so that the case may be determined in an efficient manner.

Here, after failing through several months to request the documents he now seeks, it has come to light that Plaintiff is, in fact, seeking to discover documents he and a colleague provided to AALS. In fact, Professor Rodriguez, chair of the site team that produced the report, (Docket No. 92-1 at ¶ 3), filed a declaration with this Court, wherein he explicitly stated that *all* the information pertaining to potential discrimination was submitted by ***the Plaintiff*** and one other

---

Plaintiff's counsel should have been prepared, at the outset of this litigation, to request the AALS documents under Rule 30(b)(6). Further, as Defense Counsel pointed out at oral argument, Plaintiff could have engaged in investigation and informal discovery, including requesting pertinent documents from his colleague, Vanessa Browne-Barbour. (*See* Docket No. 98 at 28-29).

African-American faculty member – Professor Browne-Barbour.[8] Moreover, all of the documents referred to in Footnote 4 *were provided by Plaintiff.* (Docket No. 92-1 at ¶ 9). Professor Rodriguez's conversation with Plaintiff and Browne-Barbour, and the documents supplied by those two parties, are the only instances in which racial issues were raised during the site visit. (*Id.* at ¶ 8).[9]

The Court also notes that Professor Rodriguez – a Hispanic-American – testified that he and a second member of the site visit team, Professor Mildred Robinson – an African-American – were both sensitive to diversity issues during the course of their review. (Docket No. 92-1 at ¶¶ 11-12). In Professor Rodriguez's words:

> If I had sensed any merit to allegations of racial discrimination, I would have brought them to the attention of AALS and these concerns would have been prominently aired in the Special Site Visit Report. *I found no such merit to the few allegations voiced by the two minority faculty members referred to above.*

(*Id.* at ¶ 12). These two parties, keen on diversity issues and not interested in this case in any way, saw no merit to the allegations of discrimination made by Plaintiff and Browne-Barbour. (*Id.*). Had they, their "concerns would have been prominently aired in the Special Site Visit Report." (*Id.*). This statement explains why there is so little in the report addressing diversity

---

[8] It is quite clear that this other faculty member is Vanessa Browne-Barbour, as Professor Rodriguez clearly stated that the other faculty member pursued a claim against Duquesne in Federal Court. (Docket No. 92-1 at ¶ 7). This Court presided over that matter, as well. Professor Browne-Barbour's case is docketed at Civ. No. 10-873 and is closed.

[9] Reference was also made to Dougherty's statements to the press that referred to allegations of discrimination. However, that reference was made in describing Dougherty's leadership, not whether the site visit ream had any concerns over discrimination. Moreover, the report provided more than adequate information for Plaintiff's Counsel to either be exact in his request for the document *or* to find it himself: the Report's citation reads "Quoted in Pittsburgh Tribune-Review, 6/1/10." A quick Google search with the string "Pittsburgh Tribune Review Doughtery discrimination 6/1/10" reveals, at the first link, the very article to which the Report is referring.

issues: Plaintiff and Browne-Barbour are the only two people who raised any concerns, and the site visit team found these concerns meritless.

The revelations of Professor Rodriguez's declaration make several things clear to this Court. First, compelling AALS to disclose documents that originated with Plaintiff or his colleague would be "unreasonably cumulative or duplicative," and that the documents Plaintiff seeks "can be obtained from some other source that is more convenient, less burdensome, or less expensive" than formal discovery. *See* Fed.R.Civ.P. 26(b)(2)(C)(i). Plaintiff already has, or should already have, many of the documents he seeks, making his request for same unreasonably duplicative. Additionally, it is clear that they can be obtained in a "more convenient, less burdensome, or less expensive" manner. As far as his own documents are concerned, they should be on Plaintiff's hard drive or in his filing cabinet. A simple phone call would presumably be sufficient for Plaintiff to acquire copies of Browne-Barbour's documents. While Plaintiff may have to pay for a long distance phone call and shipping costs, these means of informal discovery are *significantly* less costly than formal discovery and motions before this Court. Nothing impedes such informal discovery and investigation.

It is also clear to the Court that prior to the Court's extension of discovery, Plaintiff "had ample opportunity to obtain the information by discovery in the action." Fed.R.Civ.P. 26(b)(2)(C)(ii). He was undoubtedly aware of his own role in the site visit, and given their friendship and the fact that Plaintiff and Browne-Barbour participated in the same conversation with Professor Rodriguez, (Docket No. 92-1 at ¶ 6), Plaintiff should also have been aware of Browne-Barbour's role in producing any documents to AALS. With this knowledge, Plaintiff had ample opportunity – either during the administrative process or during the initial discovery period in this case – to obtain the information he sought. Plaintiff failed to take advantage of the

many opportunities he had. Blame for this failure should not be placed at the feet of the Defendants or AALS. In accord with Rule 26(b)(2)(C), the Court declines to compel disclosure of documents that could have been acquired in a cheaper, more expeditious manner at a much earlier date in this litigation.

## IV. Conclusion

For these reasons, Plaintiff's Motion is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf: All counsel of record

Date: October 19, 2011